BOUTALL, Judge.
Brian Investments, Ltd. sued Ascantia, Inc. for a recission of a sale of some 32,600 acres of land on the basis of lesion beyond moiety. In defense, Ascantia, Inc. filed a motion for summary judgment which was maintained by the trial court, dismissing Brian’s suit. Brian appeals. We affirm.
The issues raised turn mainly upon the effect of several documents and agreements entered into between the parties, and the effects and obligations arising therein. The facts which led to the making of these agreements are not in dispute.
On May 7, 1976, Brian Investments, Ltd. agreed to buy from Champion Realty Corporation some 32,600 acres of land at a price of $125.00 per acre cash with a down payment of $100,000. The agreement was amended to extend the deadline of purchase until October 1, 1976 and the sale to be on credit with $500,000 payable cash and a promissory note for $3,450,000. Because of difficulty in obtaining the necessary financing, Brian Investments, Ltd. entered into an agreement with several individuals, Daniel E. Zelenka, Jack J. Reynolds and John Pol-laro on October 1, 1976 whereby Brian would furnish $100,000 of the cash purchase price, Zelenka and Reynolds would furnish $400,000 and Pollaro had furnished $44,000 in cash for expenses in order for Brian to consummate the purchase from Champion Realty. The document provided that the land thus acquired would be transferred to a new corporation to be formed by the parties known as Ascantia, Inc. to be owned on the basis of one half by Brian and the other half equally by Zelenka and Reynolds. This document contains numerous other provisions for the financing and development of the property which are not necessary to set out in detail here, except that there was to be an effort made to raise a minimum of $7,500,000 in loans in order to accomplish their purposes. Pursuant to the agreement, 5 days later on October 6, 1976, Brian sold to Ascantia the land for a consideration of $100.00 and the assumptions of the obligations in the October 1 sale as well as all of the obligations itemized in the October 1st agreement between them. The total consideration amounted to $6,344,100.
It is this sale of October 6th that is the subject of the suit for recission brought by Brian a year and several months later, January 26, 1978. The suit alleges that there was a reduction in purchase price of approximately $1,000,000 by virtue of cancellation of some of the indebtedness assumed, and that the actual reasonable market value of the land was not less than $24,450,000. Brian contends that the market value of the land was thus approximately four times the value of the consideration received and prayed for the annulment of the sale on grounds of lesion beyond moiety or alternatively that Ascantia be required to pay to Brian the difference between the consideration already paid and the reasonable market value of the land.
In defense Ascantia has filed the subject motion for summary judgment contending that the course of events show that the document is not really a sale between these parties which is a subject to attack for lesion and additionally that the subsequent transactions between the parties preclude Brian from bringing such a suit.
In furtherance of the efforts to achieve the financing for development of the property, the parties, along with a number of other persons, had confected a stock purchase agreement on the 31st day of October, 1977 by which all of the shareholders of Ascantia, including Brian, Zelenka and Reynolds as sellers, entered into a stock purchase agreement with Iman Investments, N. V., as buyer. The consideration for the stock sale was to be $1,000 in cash and a' loan to Ascantia from Iman of $7,267,926.24, said loan to be secured by the pledge of a $10,000,000 collateral mortgage note which was in turn secured by a mortgage on the 32,600 acres. That agreement imposed a number of obligations and warranties upon the parties to this suit, and these are controlling of the issue here. Despite its representations and warranties in *1277 this agreement, plaintiff Brian chose to bring this suit some three months later. Brian’s position seems to be that the court should rule that this document has no effect upon it nor impose any obligation upon it. By this device it would reap all of the benefits of those arrangements, while seeking to destroy the very foundation upon which the arrangements were made.
It is apparent that the relationships between these parties must be considered in light of the entire series of transactions that occurred between them and by reference to the totality of all of the documents, not merely by isolating one event, that is, the act of sale of October 6, 1976, and adjudicating the rights of the parties in that isolation. The act of October 6th must necessarily be considered along with the agreement of October 1st which gave it being and caused it to be effected. That agreement shows that the October 6th sale does not stand alone, and that if there exists any issues of contention between Brian and Ascantia, the basis of such a suit must rest upon the agreement of October 1 and not upon the purported sale of October 6. The sale, as well as the corporate existence of Ascantia, Inc., simply carried out the terms of the October 1 agreement.
Additionally, all of these prior documents are bound together by the provisions of the stock purchase agreement of October 31, 1977. In that agreement, Brian, as well as the other shareholders warranted that the Iman Investments would receive the stock free and clear of all liens, incumbrances or other adverse claims and that there were no claims of any sort against their ownership of the stock; that Ascantia had no liabilities or obligations except those that were disclosed in the document and there were no claims or any legal basis for claims that might result in or cause any material adverse change in the financial condition or operations of the business of Ascantia; that Ascantia had good valid and marketable title in and to all of the assets and properties which it purported to own and was subject to no other incumbrance, charge or lien against the property; that there was no litigation or proceedings pending or threatened against Ascantia at law or in equity, nor any knowledge of any developments or threatened developments that would be materially adverse to the business or properties of Ascantia; that they have made full disclosure of all of the facts necessary to the statements made by them. The agreement provides in Section 3.02 for a release of Ascantia in the following language:

“Section 3.02. Release of Company.

“Effective on and after the Closing each Seller hereby releases, acquits and forever discharges Ascantia of and from any and every claim, debt, demand, liability, action, cause of action and other obligation which such Seller has or may have against, or to which such seller may be entitled to performance from, Ascantia by virtue of or arising with respect to any agreement, transaction, relationship, dealing or other circumstances which have occurred or occur at any time prior to the Closing, ****’’
To the argument that Ascantia is not a party to the agreement, we say that the very purpose of the agreement was to induce Iman to loan the over $7,000,000 to Ascantia on the real estate it owned and to cause Ascantia to place a mortgage in the amount of $10,000,000 on its property. As-cantia appeared as a party and made the following representations contained in Section 8.07:
“Section 8.07 Joinder by Ascantia. As-cantia appears and executes this Agreement for the purpose of taking cognizance of all of its terms and conditions, including, without limitation, the representations and warranties made herein, and further agrees that if any representation or warranty by Ascantia or the Sellers set forth herein or in the Loan Agreement is materially misrepresented, or if any undertaking or covenant of Sellers or Ascantia under this Agreement or the Loan Agreement is breached, any such material misrepresentation or breach shall entitle the holder of the Note, at its option, to declare said Note forthwith due and payable, without presentment, demand, protest or other *1278 notice of any kind. Ascantia hereby waives any preemptive or other rights it may have under Article XI of its Articles of Incorporation, or otherwise, to purchase the Stock to be sold to Buyer hereunder.”
. We are of the opinion that the terms of that agreement act as a bar to prevent Brian from bringing a suit to rescind the October 6, 1976 sale. As the trial judge remarked in his Reasons for Judgment:
“To allow Brian the shareholder of A's-cantia stock to enter into a Stock Purchase Agreement and make representations, warranties and releases to Iman to induce it to loan money to Ascantia and to induce it to mortgage 32,600 acres to secure the Imán loan and then to allow Brian the vendor of land to Ascantia by action of rescission to negate, contravene, contradict and nullify the covenants made by Brian the Shareholder when such action would be prejudicial to Iman’s security for its loan and prejudicial to Ascantia’s ownership of the land would be to countenance an ultra vires act by Brian, and, at the very least it would be unconscionable. ****’’
The stock purchase agreement is clearly a waiver and release of any claims that Brian may have had against Ascantia arising out of the October 1 agreement, which, of course, controls the terms of the October 6 sale and caused it to come into being. The absurd result of Brian’s position is equally unconscionable when considered in relation to the parties to the October 1 agreement, who furnished the money to make the acquisition of the land possible.
Again we refer to the release of Ascantia in Sec. 3.02 quoted above. We believe the language contained therein is clear and plain. Legal agreements have the effect, of law upon the parties, and the courts are bound to give legal effects to such contracts according to the intent of the parties as determined by these clear words. Civil Code Article 1945.
For the reasons above expressed, the judgment appealed is affirmed.

AFFIRMED.